### SHINKLE v. VICKERY.

(Circuit Court of Appeals, Seventh Circuit. April 12, 1904.)

No. 992.

1. PLEDGE—RIGHT OF ASSIGNEE OF PLEDGOR TO REDEEM—EQUITABLE RIGHTS OF PLEDGEE.

Where, as a part of the same transaction, defendant exchanged shares of stock for a farm, with the privilege of reconveying the farm and receiving a certain sum in cash therefor within a year, and also made the other party a loan to pay a mortgage on the farm secured by a pledge of the stock which remained in his name, he has a right, on electing to return the farm, to retain the stock as security for the payment of the agreed price therefor, which right is superior to that of one to whom the other party has sold and transferred his equity in the stock, and of which he is not deprived by the fact that he gave a memorandum reciting the terms of the pledge only in reliance on which the stock was bought by the purchaser.

Appeal from the Circuit Court of the United States for the District of Indiana.

¶ 1. Rights and liabilities of pledgees of corporate stock, see note to Frater v. Bank, 42 C. C. A. 135.

For opinion below, see 117 Fed. 916.

The original bill was by Shinkle, a citizen of Kentucky, against Vickery, a citizen of Missouri, setting forth that on the 16th day of July, 1894, Vickery was the owner of four hundred and seventy shares of capital stock of the Hemingray Glass Company, a Kentucky corporation; that on the day mentioned, for a valuable consideration, Vickery sold such shares to Gibson, but without delivering a certificate thereof—Vickery continuing thereafter to hold the legal title for the sole use and benefit of Gibson; that July 20th, 1894, Gibson borrowed of Vickery the sum of ten thousand dollars upon his promissory note, pledging such shares and all his interest therein, as collateral security; that as a part of such transaction, and in consideration of the same, Vickery executed and delivered to Gibson the following writing:

"St. Louis, Mo., July 24, 1894.

"Whereas, I have loaned to Russell B. Gibson the sum of ten thousand dollars, for which he has executed his note for the sum of that amount to me, due and payable six months after date, bearing date July 20th, 1894, and whereas, said Gibson has deposited security to secure the payment of same 470 shares of the par value of $100 each of the capital stock of the Hemingray Glass Company, of Covington, Ky.: Now, therefore, I, the undersigned Samuel Vickery, do hereby agree to turn over and deliver to said Gibson said 470 shares of stock upon the payment of said note for $10,000 by said Gibson or his assigns at the maturity of said note, or any other time previous that may be agreed upon.                    Samuel Vickery."

—that thereafter, and for a valuable consideration, the time for the payment of the note was extended six months from January 20th, 1895; that for a valuable consideration, February 11th, 1895, such shares were sold by Gibson to Shinkle, subject to the lien of Vickery, Gibson undertaking to procure the transfer and delivery to Shinkle of the necessary certificate; that Vickery was duly notified of the rights thus acquired by Shinkle; and that on the maturity of the note as extended, Shinkle tendered to Vickery the sum of ten thousand dollars, the amount then due, demanding the transfer and delivery of the shares, which demand was refused.

The bill avers that the written instrument of July 24th, 1894, above set forth, estops Vickery from insisting on any right or equity in the shares, and other facts making the case one cognizable in equity.

The prayer of the bill is that a trust be charged upon the legal title of Vickery in such shares in favor of Shinkle, and that Shinkle be declared to be the owner of the same, and have certificate therefor, upon the payment of ten thousand dollars in discharge of the note and pledge of Gibson above set forth.

The answer, so far as it is pertinent to the facts brought out in proof, and the substantial issues involved, pleads a decree of dismissal, rendered by the Circuit Court of the city of St. Louis, affirmed by the Supreme Court of the state, in a suit by Shinkle against Vickery and the National Bank of the Republic, and claims the same as a conclusive adjudication of all the rights of the parties touching the shares set forth in the bill.

A cross bill was filed by Vickery. The cross bill sets forth in detail, the transaction out of which the purchase of the shares by Gibson arose; that portion of the cross bill being as follows: That in the month of July, 1894, your orator was the owner of the said four hundred and seventy shares of stock of The Hemingray Glass Company, and defendant Russell B. Gibson was the owner of a tract of land in the county of St. Louis, in the state of Missouri, bounded on the north by the Missouri river, on the east by R. C. Tandy, on the south by Schustzmeier, and on the west by Coldwater creek and J. J. O'Neill, and containing about 127.97 acres; that said land was at that time subject to an encumbrance of ten thousand dollars; that your orator and said Gibson entered into a negotiation for an exchange of their said properties; that your orator and said Gibson finally came to an agreement for an exchange; that it was part of said agreement that said land should be cleared of said encumbrance by said Gibson before the same should be conveyed to or accepted by your orator; that said Gibson being unable to raise said sum of ten thousand dollars, solicited and induced your orator to make a loan to

him of that sum, wherewith to pay off the said encumbrance, and that the same was paid off with the money so loaned by your orator; that the promissory note mentioned in the bill of said Shinkle, filed in this court, was given by said Gibson to your orator as evidence and in consideration of said loan, and the payment of said loan was secured by the retention of said four hundred and seventy shares of stock in the hands of your orator; that said loan of ten thousand dollars was made by your orator to said Gibson in order to enable him to pay off said encumbrance and to consummate said agreement of exchange as aforesaid, and for no other purpose, and that said agreement was consummated by means of said loan and said land was conveyed by said Gibson to your orator; and that said note was executed and delivered by said Gibson to your orator, and that the receipt or stock contract dated July 24th, 1894, and set out in said Shinkle's bill, was executed by your orator and delivered to said Gibson, all on the same day and as part of the same transaction of exchange.

Your orator further says that it was part of said agreement that, if in one year from the 16th day of July, 1894, your orator should be dissatisfied with his said purchase of land, the said Gibson thereby bound himself to take the said land back and to pay therefor the sum of thirty two thousand dollars. Your orator further says that said stock was worth much more than ten thousand dollars, and said land was worth much less than thirty two thousand dollars; so that there would be a large profit in redeeming said stock from the said pledge to your orator by paying said note for ten thousand dollars; and on the other hand said Gibson would sustain a heavy loss if he should carry out his agreement to buy back said land.

The cross bill prays that an account be taken between Vickery and Gibson; that a decree be entered against Gibson requiring him to pay the amount of damages found due to Vickery; and that a decree be entered against Shinkle, requiring him, in case the said Gibson should fail to comply with such decree, to pay the same before he be allowed to redeem such shares.

The decree appealed from was entered on both bill and cross bill, dismissing the original bill as to defendant Vickery, for want of equity, and dismissing the cross bill without prejudice to another suit.

The further facts are stated in the opinion of the court.

Robert Ramsey, for appellant.

T. R. Skinker, for appellee.

Before JENKINS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

GROSSCUP, Circuit Judge (after stating the facts as above). The Missouri suit was by Shinkle against Vickery, and the National Bank of the Republic; and was based on Shinkle's alleged legal title to the shares in question by virtue of their sale by Vickery to Gibson, and their re-sale by Gibson to Shinkle. The prayer was for a compulsory specific assignment of the shares by Vickery directly to Shinkle.

We are inclined to hold, though not free from doubt, that the suit under review is by Shinkle, not in his own right, but in the right of Gibson to the shares in question, not as holder of the legal title, but as possessing an equity in Gibson's claim of title. The object of the bill, in that view, is not an assignment of the certificate, but an adjustment by the court of Gibson's transaction with Vickery to the extent that Shinkle is entitled, as one having an intervening equity, to such adjustment. In such a view of the two suits, the Missouri suit and this suit would be fundamentally different. In the Missouri suit the issue raised was that Shinkle had no legal title. In this suit the question raised would be the nature of Gibson's transaction, and the extent of his relief, and of Shinkle's interest therein.

against Vickery; and it would follow that an adjudication of the Missouri suit, would be no adjudication of the issues of this suit. But this distinction need not be worked out for we are ready to decide this case on the proofs.

The original contract between Vickery and Gibson was in the nature of an exchange of the shares in question for a farm in St. Louis County, Missouri. The agreed price for each—the farm and shares—was thirty-two thousand dollars. So far as the transaction related to the shares it seems to have been unconditioned, but to the extent it related to the farm, it was accompanied with these conditions: That Gibson should, on his part, during the next succeeding year, have a right to re-purchase the farm upon the payment of the thirty-two thousand dollars in cash; and that Vickery should, on his part, during the same period, have a right to tender back the farm, and demand in cash, the fixed price of the shares, thirty-two thousand dollars. Collateral to the latter portion of this agreement, Gibson made to Vickery his deed of another farm in Christian County, Missouri.

After this transaction had been entered into, it turned out that an encumbrance of ten thousand dollars on the St. Louis farm, to be paid off by Gibson under the stipulations of the agreement, was not paid off; whereupon a supplemental agreement was made, under which Vickery advanced to Gibson, to pay off such encumbrance, the ten thousand dollars needed. To secure himself for this advance, it was agreed that Vickery should hold, as collateral, the shares in question, and the memorandum already set forth was delivered, as evidence of that portion of the supplemental agreement.

But before the year stipulated for had expired, and a month or so before the sale of the shares by Gibson to Shinkle, Vickery elected to exercise his option to give back the farm, and take in lieu thereof the thirty-two thousand in money. This he had a clear right, under the agreement, to do. Gibson failed to pay the money, and thus, in this respect, broke his agreement. There can be no doubt that as between Vickery and Gibson, Vickery from that moment had the right to withhold the assignment or delivery of the shares, until Gibson had either performed his contract, or compensated Vickery for the loss suffered by his failure to so perform. The transaction covering the exchange of the shares and farm, with the accompanying options, and the supplemental transaction out of which grew the collateral pledge evidenced by the memorandum, were in essence, a single transaction. Vickery could insist that either the whole of it, or no part of it, should be carried out; and could recoup losses for failure to carry out one part from anything found available in any other part. Such clearly were the rights of the parties, had the rights of Shinkle not subsequently intervened.

Shinkle insists that though he prosecutes this suit in the right of Gibson, he stands, with reference to Vickery, in a right somewhat different from Gibson's. He insists that the memorandum of July 24th, 1894, constitutes an estoppel upon Vickery, whereby his rights against Vickery are augmented beyond those available to Gibson.

The transaction with Gibson, bringing Shinkle into the case, was as follows: Shinkle sold to Gibson, at a price named at fifty thousand five hundred dollars, one hundred and ten lots at Findlay, Ohio; agreeing also to advance to Gibson twenty thousand dollars to purchase a leasehold interest in St. Louis. As security to the twenty thousand dollar advance, Gibson gave to Shinkle title to the leasehold interest; and as part payment of the purchase price of the lots, transferred to him the shares in question at a price fixed at twenty-three thousand dollars, ten thousand dollars of which was to be paid by Shinkle to Vickery to redeem the shares from the pledge already referred to. Upon the entire transaction three thousand dollars was at the time paid down by Shinkle.

Vickery had no knowledge of this transaction between Gibson and Shinkle, and Shinkle claims to have had no knowledge of the transaction, in its entirety, including the option features, between Gibson and Vickery; and lays stress upon the claim that the payment of the three thousand dollars was made solely on the faith of the memorandum shown him.

The memorandum was, as we have already seen, not a transaction by itself, but part of another, and a larger, transaction. It was not meant to be shown to Shinkle, or to be given to the world; it was drawn solely for the eyes of Gibson and Vickery, and as evidence of a supplemental feature of their transaction as an entirety. That Gibson used this detached paper to deceive Shinkle, need not be denied; that the use Shinkle now asks the court to make of it, would be a wrong to Vickery, is equally undeniable. We see in the execution and delivery of the memorandum by Vickery, under the circumstances shown, no failure of ordinary precaution, or negligence of any kind, that in equity and good morals should make him responsible for the use made of it by Gibson. The memorandum had no place outside the Gibson and Vickery transaction; we cannot assume that Vickery ought to have foreseen that Gibson would give it an independent meaning and existence. Thus viewed, Vickery and Shinkle are equally innocent; and their equities to the shares must be settled, not by estoppel, but by priority of claims in point of time, a priority that indisputably is Vickery's.

Had Shinkle in right of Gibson, in apt time, have offered to carry out Gibson's part of his contract with Vickery, or reimburse Vickery for his damages, he might have laid claim to an assignment of the shares. But no such offer was made in the bill, nor in the subsequent proceedings, though the cross bill invited it. Shinkle is, in consequence, without equitable footing on which to ask for relief.

The decree must be affirmed.

JENKINS, Circuit Judge. I concur in the result, but prefer to rest my judgment upon the ground that the appellant sues in his own right, and not in right of Gibson, and is therefore concluded by the Missouri adjudication. The bill nowhere asserts prosecution in right of Gibson, nor does it allege the insolvency of the latter. I am unable to distinguish the claim asserted in the bill from the claim made in the litigation in the courts of Missouri. It is essentially the same,

and not another or different, claim, and is predicated upon the same facts. In my judgment, the doctrine of res adjudicata should have full force.